Filed 5/23/23  Connolly Ranch v. Department of Parks and Recreation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CONNOLLY RANCH, INC., | C092009 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-URP-2016-12394) |
| v. | |
| DEPARTMENT OF PARKS AND RECREATION et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that in response to the petition for rehearing filed by plaintiff Connolly Ranch, the opinion filed in this case on May 2, 2023, be modified as follows:

1.      On page 28, the last paragraph, beginning "Plainly, the jury found the Ranch," is deleted and the following paragraphs inserted in its place:

Plainly, the jury found the Ranch failed to prove the causation element of its breach of contract cause of action.  Indeed, it is well established that the requirement of "proof the plaintiff 'was harmed by' a defendant's breach of contract" concerns "*the element of causation*" of a breach of contract claim.

1

(*Troyk v. Farmers Group, Inc.*, *supra*, 171 Cal.App.4th at p. 1353, italics added.) By finding the Ranch suffered no harm, the jury essentially found the Ranch could not establish that the Department's breach of contract proximately caused the Ranch any injury. The trial court thus could not issue a permanent injunction *on the Ranch's breach of contract claim*. (*San Diego Unified Port Dist. v. Gallagher* (1998) 62 Cal.App.4th 501, 503 ["To qualify for a permanent injunction, the plaintiff must prove (1) *the elements of a cause of action involving the wrongful act sought to be enjoined* (here, [breach of contract]); and (2) the grounds for equitable relief"], italics added.)

The jury's verdict also rendered the second requirement for issuance of a permanent injunction lacking, i.e., grounds for equitable relief. To obtain a permanent injunction, "a plaintiff ordinarily must show that the defendant's wrongful acts threaten to cause *irreparable injury*, meaning injury that cannot adequately be compensated in damages." (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1167, italics added.) "Irreparable harm may be established where there *is the fact of an injury, such as that arising from a breach of contract*, but where there is an inability to ascertain the amount of damage. In other words, to say that the harm is irreparable is simply another way of saying that pecuniary compensation would not afford adequate relief or that it would be extremely difficult to ascertain the amount that would afford adequate relief." (*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 722, italics added.)

For these reasons, the trial court did not err in its interpretation that the jury's breach of contract verdict precluded equitable relief.

This modification does not change the judgment.

Appellant's petition for rehearing is denied.

BY THE COURT:



/s/
ROBIE, Acting P. J.




/s/
DUARTE, J.




/s/
BOULWARE EURIE, J.

Filed 5/2/23  Connolly Ranch v. Department of Parks and Recreation CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CONNOLLY RANCH, INC., | C092009 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-URP-2016-12394) |
| v. | |
| DEPARTMENT OF PARKS AND RECREATION et al., | |
| Defendants and Respondents. | |

Plaintiff Connolly Ranch, Inc. (Ranch) sued defendants Department of Parks and Recreation and its Off-Highway Motor Vehicle Recreation Division and Off-Highway Motor Vehicle Recreation Commission (collectively Department) for breach of contract, breach of the covenant of good faith and fair dealing, trespass, nuisance, and declaratory relief.  The trial court bifurcated the legal and equitable claims; the jury heard and decided the legal claims first.  The jury returned verdicts in favor of the Department.  The trial court thereafter considered whether to conduct a bench trial on the Ranch's

1

injunctive and declaratory relief requests. The trial court found the jury's factual findings bound the trial court and precluded equitable relief. The trial court thus found a further bench trial unnecessary. The Ranch appeals.

The Ranch presents a myriad of arguments challenging the trial court's denial of its requests for permanent injunctive relief and declaratory relief, including that the trial court misinterpreted two of the jury's special verdict findings and abused its discretion in finding the requested equitable relief was moot and unwarranted. The Ranch also challenges the jury's adverse finding on the trespass cause of action, asserting it is contrary to law and unsupported by substantial evidence. Finally, the Ranch challenges two evidentiary rulings: (1) the trial court's exclusion of certain testimony and evidence the Ranch wished to present through its retained expert, Leonard Job; and (2) the trial court's admission of testimony referencing explosive testing on two properties in the vicinity of the Ranch's property.

We find no merit in these contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

We initially admonish the Ranch for failing to provide record citations for *each* fact presented in its statement of facts. Some of the background facts stated herein were unsupported by citations to the record; however, the parties agreed on the unsupported facts, which we treat as mutual concessions. (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 3.) We set forth the general background here and provide additional factual background pertinent to the Ranch's arguments in the Discussion *post*, as necessary.

---

[1] The Ranch's late filed application for permission to accept the manual transmission of trial exhibits on electronic media is denied. The Ranch submitted the application and exhibits to this court *after* briefing had concluded, even though the Ranch cited to certain trial exhibits in its opening brief. The Ranch has provided no good reason for its tardiness in transmitting the exhibits.

2

The Department manages the Carnegie State Vehicular Recreation Area (recreation area), which consists of a vast area dedicated to public off-highway recreation riding. The Ranch is located adjacent to the recreation area. SRI International operates an explosive testing facility that borders both the recreation area and the Ranch.

In 1990, the Ranch and the State of California (State) entered into an Agreement and Grant of Easement (Agreement). The same year, the trial court entered a judgment, attaching a copy of the Agreement and incorporating and ordering the terms and conditions set forth therein (1990 Judgment).

In the Agreement, the State granted to the Ranch "a nonexclusive easement to use, maintain, inspect, repair and replace an existing private roadway" generally referred to as SRI Road (1990 Easement). SRI Road traverses from Corral Hollow Road, a public road, through the recreation area and onto the Ranch's property, crossing Corral Hollow Creek at a low-water crossing or spillway made of concrete. In addition to the Ranch and Department, SRI International also uses the 1990 Easement.

The 1990 Judgment provides the Department "shall erect fences or place other barriers along portions of the easement to discourage use by the public entering the [recreation area]. The [Department] shall designate crossings at certain points on the Easement to allow users of the park to cross the road. [The Ranch] shall have the opportunity to review and comment on the proposed locations of the fence and crossings. The [Department] shall post at both points at which the Easement terminates, and at any crossings or points at which the fence does not separate the road from the park, signs stating that the Easement is closed for use by the users of the park and warning that large vehicles use the easement. The [Department] shall maintain said fence, signs and designated crossings so long as current uses exist. [The Ranch] shall not call upon [the Department], nor shall [the Department] have any responsibility to perform any maintenance work or to make any repairs or improvements on said road, except that the [Department] shall repair and maintain any damage caused by the use [or] users of the

3

park. As to those portions of the Easement closed to users of the park, if [the Ranch] feels more maintenance or repair work is needed than is actually performed by [the Department], [the Ranch] may perform such repairs or maintenance at [the Ranch's] own expense."

The Ranch sued the Department in 2016. In its operative complaint, the Ranch asserted causes of action for trespass, nuisance, breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief.[2] The Ranch alleged the Department was interfering with and obstructing the Ranch's use of the 1990 Easement as described in the Agreement, and was using the servient tenement in a manner inconsistent with the Ranch's authorized uses. The Ranch sought damages for the Department's breach of contract in the amount of $205,102.03 to remove and replace the spillway crossing.

As to declaratory relief, the Ranch asserted an actual controversy existed concerning the parties' "respective rights and duties in that [the Ranch] own[s] and [is] entitled to continued possession, use, and quiet enjoyment of [the 1990 Easement] without unreasonable interference from recreational off-highway vehicle use and public access and the continued possession, use, and enjoyment of [its] adjoining property without being exposed to excessive and hazardous noise, runoff, and erosion." The Ranch further asserted the Department believes it has "a right to allow off-highway vehicle and public access to, and use of, the [1990 Easement] between the termination of the [1990 Easement] on Corral Hollow Road, across the Corral Hollow creek crossing and to the point at the base of the Carnegie Ridge where the easement has been fenced to prevent recreational off-highway vehicle use and public access, and to operate the Carnegie off-highway vehicle park without buffers as exist in other parks causing excessive, and hazardous noise, and runoff and erosion on [the Ranch's] property."

---

**2** Declaratory relief is an equitable remedy and not a cause of action. (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173.)

4

In its prayer for relief, the Ranch sought an injunction on "all causes of action" (capitalization, underlining, & boldface omitted) and a declaration providing: (1) "[r]ecreational off-highway vehicle use or public use or access be enjoined on the [1990 Easement] except at designated crossings as shown on [attached exhibits]"; (2) "[p]ublic off-highway vehicle use, recreational use and public use or access of the Corral Hollow spillway crossing be enjoined"; (3) "[t]he [Department], to the extent that any non-public use of the cement spillway crossing is allowed, be enjoined from us[ing] the spillway crossing other than crossing on the cement spillway structure, and be enjoined from crossing downstream or upstream of [the] spillway crossing resulting in its expansion of the crossing beyond the width of the cement spillway structure"; (4) the Department "be enjoined from erecting any structures, including but not limited to split rail fences, which divert or channel water across the spillway crossing or over or along the [1990 Easement]"; (5) the Department "be enjoined from erecting or placing facilities or structures, including but not limited to dumpsters, split rail fences, car barriers, large boulders or bales of hay used as barriers which block [the Ranch's] use of the [1990 Easement]"; (6) "[o]ff-[h]ighway vehicle use, public access, or off-highway recreational trails be enjoined and allowed only as shown on [attached exhibits], or a greater or lesser distance to be established at trial, of the [1990 Easement] in any area where such use will interfere with the use and enjoyment of the [1990 Easement] or adversely physically impact the [1990 Easement] be enjoined"; (7) "[r]ecreational [o]ff-[h]ighway vehicle use or public access of any designated crossing of the easement be enjoined unless the crossing is paved by [the Department], the pavement is maintained by [the Department] and at least once every 12 hours during and after off-highway vehicle use or more frequently if necessary, to keep the crossing free from mud, rocks, dirt and debris"; (8) "[t]he use of the termination point of the easement on Corral Hollow Road as a public entrance or exit, for special events or any other public purpose, be enjoined"; (9) "[t]he use of signs or posters directing the public into or out of the termination point of the

5

easement on Corral Hollow Road as a public entrance or exit, for special events or any other public purpose, be enjoined"; (10) "[p]ublic or recreational use of the [1990 Easement] . . . on Corral Hollow Road, across the Corral Hollow creek crossing and to the point at the base of the Carnegie Ridge where the easement has been fenced to prevent recreational off-highway vehicle use, be enjoined other than at [designated] crossings"; and (11) "[p]rohibiting [the Department] from allowing public recreational off-highway vehicle use in any area that drains into [the Ranch's] property." The Ranch further sought a declaration that the 1990 Easement "includes the right to exclude recreational public use and the right to prevent public recreational trails above, below and on the easement, which damage it, as necessary for the use and full enjoyment of the easement for its expressly intended purpose."

The trial court granted the Ranch's request for two preliminary injunctions prior to trial. The first preliminary injunction provided the Department was "prohibited from allowing any public use and from allowing its employees, agents, assigns and contractors with vehicles in excess of 15,000 [pounds] from using the spillway crossing of the Corral Hollow Creek located on the SRI road, a Connolly Ranch easement" during the pendency of the action. The second preliminary injunction provided the Department was "prohibited from allowing any public use of the easement from Corral Hollow Road to the base of the Carnegie Ridge, a Connolly Ranch easement."

The Ranch filed a motion in limine seeking to bifurcate its request for declaratory relief and requesting to have the court trial on the equitable relief be held first. The Ranch argued a threshold issue was whether the 1990 Judgment and the Agreement were clear and unambiguous as to the parties' respective duties and obligations, including whether the Department was required "to fence the easement and restrict public use." The Ranch asserted, following the trial court's determination in that regard, "The jury c[ould] then be instructed on those duties and obligations in determining the remaining causes of action."

During oral argument on the Ranch's bifurcation motion, the parties agreed any ambiguity as to the Agreement and 1990 Judgment was a threshold issue to be determined by the trial court. The Ranch argued the jury would decide the factual arguments pertinent to the remaining causes of action. The trial court granted the Ranch's request to bifurcate the trial. The trial court explained, "Both sides agree that the Court must try the equitable claims including the declaratory relief action, and the legal claims are subject to a jury trial." The trial court ruled it made more sense to hold the jury trial first because the legal claims made up the "lion's share of the causes." The trial court noted it "would concurrently hear the evidence, and then, after the jury trial, allow additional evidence, if any, to be presented on the remaining equitable causes of action . . . and any equitable issues outstanding." The trial court "invit[ed] Counsel to present either a joint or separate outline of the various causes of action and issues to be determined by jury and Court, respectively."

Prior to trial, the trial court issued an order interpreting the Agreement and the 1990 Judgment in response to three motions in limine filed by the parties. The trial court found: (1) the Agreement and the 1990 Judgment are "unambiguous and did not allow public use over the low water crossing"; (2) the Department "never designated a crossing as required by the contract/judgment of 1990"; (3) the Department "accepted responsibility to maintain and repair areas of the easement open to the public use for damage caused by such use," which "use was to be limited to designated crossings"; (4) the Department had a "duty to fence and install signage"; and (5) the Ranch was to maintain the easement except for areas damaged by the public.

The jury trial took approximately three weeks. We do not discuss the specific evidence presented at trial, except as presented in the Discussion *post*, because it is irrelevant to the issues presented on appeal.

The trial court instructed the jury, among other things: "By a Judgment and written agreement entered in 1990 between [the Department] and [the Ranch], [the

7

Ranch] was granted an 'easement' or legal right to use a road located on the [recreation area property] in order to access a public road. The easement requires the Department . . . not allow public use of the road except at designated crossings. It requires the Department . . . to fence the road and install signs on the road. The Department . . . is responsible to maintain, and repair areas of the road easement open to the public for damage caused by such use. [The Ranch] is responsible to maintain areas of the road where the public is excluded unless damaged by the public.

"[The Ranch] contends the Department . . . breached the Judgment and Agreement by allowing public use of the road other than at designated crossings, failing to designate crossings and exclude the public from the easement, damaging the low water crossing and road, failing to maintain and repair the road open to the public, and failing to fence the road and install signs. [The Ranch] contends that the [Department's] interference with the use of the road easement is a nuisance and a breach of the covenant of good faith and fair dealing.

"The Department . . . denies each of these allegations and alleges the damage to the road at the low water crossing was caused by a 2017 storm for which it is not responsible. The Department . . . further denies the allegations on the grounds that [the Ranch] by its conduct gave up its right to enforce certain contract terms.

"[The Ranch] and the [recreation area] also share a common boundary that is approximately one and a quarter miles. [The Ranch] contends that the Department . . . has caused a nuisance and trespass by causing erosion, sedimentation, noise, dust, trash and vibration to enter [the Ranch] property[,] which the Department . . . denies."

The jury presented its findings on special verdict forms. On the breach of contract claim, the jury found: the Ranch did all or substantially all "of the significant things that the contract required it to do"; the Department failed "to do something that the contract required it to do or do something the contract prohibited it from doing"; but the Ranch was not harmed.

8

On the breach of the implied covenant of good faith and fair dealing cause of action, the jury found: the Ranch did all or substantially all "of the significant things that the contract required it to do"; but the Department did not "unfairly interfere with [the] . . . Ranch's right to receive the benefits of the contract."

On the trespass cause of action, the jury found: the Department did not intentionally cause or, "although not intending to do so, recklessly or negligently cause" vibrations or noise causing damage to the land or structures or other improvements on the Ranch's land; the Department did intentionally cause or, "although not intending to do so, recklessly or negligently cause" garbage, mud, rocks, and sediment from erosion to enter the Ranch's property; but the Department did not enter the Ranch's property without permission.

On the private nuisance cause of action as to the Ranch's three lots adjacent to the recreation area, the jury found: the Department, by acting or failing to act, created noise, garbage, mud, rocks, and sediment from erosion (but did not create vibrations or dust) "to exist that was offensive to the senses or an obstruction to the free use of property, so as to interfere with the [Ranch's] comfortable enjoyment of life or property"; the Department's "conduct in acting or failing to act [was] intentional and unreasonable . . . or unintentional, but negligent or reckless"; but the "condition" created did not "substantially interfere with [the] Ranch's use or enjoyment of its land."

On the private nuisance cause of action as to the Ranch's right to use the nonexclusive easement along SRI Road, the jury further found: the Department did not create or permit erosion that undermined the road "that was offensive to the senses or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life, property or the easement"; the Department created or permitted to exist conditions "other than erosion that undermined [the] Road -- that were offensive to the senses or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life, property or the easement"; the Department's "conduct in acting or failing to act

9

[was] intentional and unreasonable . . . or unintentional, but negligent or reckless"; but "this condition [did not] substantially interfere with [the] Ranch's use or enjoyment of its land."

Following the jury's verdicts, the trial court said it needed to determine next steps and asked the Ranch whether it wanted to continue with a bench trial and intended to put on additional evidence. The Ranch responded affirmatively to both questions. The Ranch explained the trial court already interpreted the Agreement and 1990 Judgment and the jury "deemed there was a breach of that contract." The Ranch argued the jury's "no harm" finding did not preclude injunctive relief because "[t]he jury has basically determined there's a continuing ongoing violation of the contract." The Ranch specifically sought "injunctive relief particularly as to the area between Corral Hollow Road and the gate at the base of the Carnegie Ridge" because the jury determined there was a contract and the Department breached that contract.

The trial court requested briefing as to whether any equitable relief remained to be ruled upon, noting "[t]here's disagreement as to what this verdict means." The court explained: "All we're doing is trying to interpret the verdict vis-a-vis the equitable action that's left, if any."

In its brief, the Ranch argued it had "shown a prima facie case for equitable relief, including specific performance and injunctive relief prohibiting future breach," based on the evidence presented at the preliminary injunction hearing, the evidence presented during the jury trial, and the jury's special verdict finding that the Department had breached the Agreement and 1990 Judgment. The Ranch asked to also "present further evidence in support of that equitable relief." The Ranch argued the jury's lack of harm finding did not preclude equitable relief.

The trial court issued a tentative ruling denying the Ranch's request for an equitable bench trial. The trial court said the request for a permanent injunction was moot and no further proceedings were warranted. The trial court detailed the jury's

10

findings and reviewed the requirements under Civil Code section 3422 and Code of Civil Procedure section 526. The trial court found Civil Code section 3422 inapplicable because the Ranch was "basing its request for a permanent injunction on the threat of *future* harm, not yet realized." The trial court further found Code of Civil Procedure section 526 inapplicable because, in order to obtain a permanent injunction under that statute, the Ranch had to "show that specific performance of the easement/contract is available." The trial court noted the Ranch was seeking leave to amend the complaint to " 'conform to proof' " "to include a cause of action for specific performance of the easement/contract." The trial court denied the request because it disagreed that the Ranch had made a prima facie case showing it was entitled to specific performance, and explained the Ranch could not show the inadequacy of a legal remedy element for specific performance "because [the] Ranch sought damages for the alleged breach thereby implying that monetary damages are adequate." (Citing *Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472 [listing elements to obtain specific performance after a breach of contract].)

The trial court further wrote the Ranch "for the first time" argued in its reply brief a trial on equitable issues remained warranted as to the declaratory relief "cause of action." The trial court disagreed. The trial court explained, "[T]he declaratory relief 'cause of action' seeks a declaration by the Court of what [the Department] may and may not do; what is allowed and what is not allowed under the easement/contract. [¶] During Phase 1, the jury found [the Department] has breached the easement/contract, but also found that such breaches – to date – have not harmed [the] Ranch. [¶] Thus, after the jury verdict, there is not a controversy about what is or is not allowed under the easement/contract. [The] Ranch alleges that State is allowing or creating conditions which go beyond what is allowed by the easement. The jury agreed. [¶] A judicial determination is not necessary or appropriate on those issues now. A judicial

11

determination of what is or is not allowed under the easement/contract resolves nothing. The easement/contract sets forth the contract terms.

"[The] Ranch may argue that there is a probable future dispute warranting declaratory relief, but that dispute will be about whether [the] Ranch has been harmed and whether damages or other equitable relief is warranted. That is not what is being requested by the declaratory relief 'cause of action.' And, so, the declaratory relief requested does not appear to be necessary." (Boldface omitted; citing Code Civ. Proc., § 1061 ["The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances"].)

The trial court continued, "[T]here is no present controversy about what is and is not allowable under the easement/contract. The jury agreed with [the] Ranch. The controversy [the] Ranch finds itself in is whether the breaches interfered with [the] Ranch's use or otherwise harmed [the] Ranch. And because there is no controversy about what is and what is not allowable under the easement/contract, the Court's declaration of what is or is not a breach serves no purpose; i.e., is not necessary or proper and would be superfluous. [¶] Accordingly, there is no reason to have a Phase 2 [trial] or further evidentiary hearing. Declaratory relief as an equitable remedy is not warranted under the facts found to exist by the jury. [¶] In the event [the] Ranch argues that it wishes to amend the request for declaratory relief 'to conform to proof;' that is, to ask for a declaration as to what constitutes compensable harm or interference, that argument would likewise be unavailing since defining future possible harm is speculative and beyond the scope of a declaratory relief request."

During the hearing that followed, the Ranch extensively argued its reasons against the analysis in the tentative ruling. One of the arguments resonated with the trial court— whether the trial court should include its "ruling as far as the meaning of the settlement agreement" as a declaration in the judgment. The trial court requested briefing on that

12

issue. The trial court noted, however, "[T]he biggest problem here is the *Hoopes v. Dolan* case." (Italics added; citing *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146 (*Hoopes*).) The trial court dissolved the preliminary injunctions, stating it did not find any basis to conduct any further proceedings in that regard; the Ranch did not object.

The Department asked whether the trial court wanted to sign the proposed order denying a further court trial. The trial court told the Department to run the order by the Ranch and said it would then review the order. The Ranch responded that denying the equitable trial "would depend on what the Court determine[d]" at the next hearing based on the briefing. The trial court disagreed: "No, the [next hearing] is whether or not my interpretation of the contract from [February 20, 2019,] goes into the verdict or not as a declaration, as the Court having made that declaration." The trial court explained that it was "bound by what the jury said" and understood the arguments; it was just "trying to figure out which is correct on that one last piece," which was "very limited" as to whether the trial court's findings regarding the contract interpretation "should be included in the judgment or not."

At the hearing that followed, the trial court reiterated the hearing was to determine "the limited issue of whether or not the judgment should include the Court's ruling on the contract interpretation which was a motion in limine prior to the jury trial." The trial court ruled there was no "pending case or controversy" for declaratory relief because the jury's findings established no right to declaratory relief, including the finding that "there was no harm whatsoever." The trial court said it believed *Hoopes*, *supra*, 168 Cal.App.4th 146 "is dispositive on" the issue and thus the court was "declining to add the ruling regarding the contract interpretation to the judgment."

The Ranch appeals.

## DISCUSSION

Before we delve into the merits of the Ranch's argument, we note appeals are subject to rules. When an appellant fails to follow those rules, we may deem arguments

forfeited.  For example, we may deem arguments forfeited when the appellant discusses or raises lurking or tangential arguments without providing proper headings identifying the arguments as issues to be decided on appeal.  (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"]; *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 593, fn. 10 [appellate courts have no duty to respond to improperly headed lurking or tangential arguments].)  "We may and [also] do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)  Finally, " ' "[a]rguments should be tailored according to the applicable standard of appellate review."  [Citation.] Failure to acknowledge the proper scope of review is a concession of a lack of merit,' " rendering the arguments subject to forfeiture.  (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 (*Ewald*).)  We deem several of the Ranch's arguments forfeited under the foregoing legal principles, as discussed *post*.

I

*The Trial Court Did Not Repudiate Its Bifurcation Order,*

*Nor Did It Deny The Ranch Due Process Of Law*

The Ranch argues, "The court's repudiation of its own bifurcation order and its refusal to allow the Ranch to offer evidence supporting its equitable claims denied the Ranch due process of law."  (Boldface omitted.)  The Ranch asserts that, "when a party is denied the right to present his or her case with supporting evidence, its due process rights are contravened."  After citing general propositions of law pertinent to due process rights, the Ranch states, "When the court cancelled the equitable phase, it refused the Ranch *any* opportunity to present evidence supporting *any* of its equitable claims.  There were many

unresolved claims and the uncertainty in the parties' rights and duties persists. Prejudice is abundant and apparent." There are several issues with the Ranch's argument.

First, the trial court did not repudiate its bifurcation order. The order stated the trial court would concurrently hear the evidence for purposes of the legal and equitable phases of trial and would "allow additional evidence, *if any*, to be presented on the *remaining* equitable causes of action." (Italics added.) Following the jury's verdict, the trial court determined no equitable issues remained and thus no further evidence needed to be introduced. This finding was consistent with the language of its bifurcation order, and we thus find no basis for concluding the trial court repudiated its prior order.

Second, we find no basis for concluding the trial court "misled the Ranch into foregoing a complete presentation of its evidence in the jury phase – the last chance it would have to do so," as the Ranch asserts. *Darbun Enterprises, Inc.* does not support the Ranch's assertion in that regard. (Citing *Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399, 411.)

In *Darbun Enterprises, Inc.*, the plaintiff brought an action for breach of contract and sought specific performance as well as damages. (*Darbun Enterprises, Inc. v. San Fernando Community Hospital*, *supra*, 239 Cal.App.4th at p. 404.) The trial court bifurcated the trial into two phases, limiting the first phase to the equitable issue of whether specific performance was an appropriate remedy. (*Id*. at p. 405.) The court reserved the breach of contract issue for the jury. (*Id*. at p. 406.) "At the end of the equity phase, however, the trial court stated it could not decide on the specific performance issue until it heard additional evidence, to be presented at the jury trial. The jury, which already had been seated and sworn, was called and the second, legal, phase of trial commenced. After [the plaintiff] presented its case, [the defendant] moved for nonsuit. The trial court granted that motion as to specific performance only. It found that, after weighing the evidence and making credibility determinations as the equity fact finder, the lease could not be specifically performed, and that [the plaintiff] had failed to

15

perform its obligations under the lease. Nevertheless, the trial continued, and after [the defendant] rested, [the defendant] moved for a directed verdict. The court denied that motion. The jury found in favor of [the plaintiff] and awarded damages; the court entered judgment for [the plaintiff]. [The defendant] then filed a motion for judgment notwithstanding the verdict . . . . That motion was granted. The court based its decision on findings it had made on the motion for nonsuit. The court reasoned that since it already had found the lease to be 'unenforceable' and [the plaintiff] had failed to perform its obligations, there was no substantial evidence to support the jury verdict in favor of [the plaintiff]." (*Id.* at p. 402.)

The appellate court held the trial court improperly granted the defendant's motion for judgment notwithstanding the verdict because it "made a finding on breach after explicitly reserving that issue for the jury." (*Darbun Enterprises, Inc. v. San Fernando Community Hospital*, *supra*, 239 Cal.App.4th at p. 413.) Here, in contrast, the trial court said it believed the *jury's factual findings* precluded equitable relief; the trial court did not disregard findings reserved for the jury, as the trial court did in *Darbun Enterprises, Inc.*

Further, although "[i]t is well settled that, in the second phase of a bifurcated trial, the parties may present evidence that was not presented during the first phase," as the Ranch asserts, "this principle does not compel the trial court to hold an otherwise unnecessary second phase trial merely because a party contends it *can* present additional evidence." (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 361, italics added.) The Ranch never identified to the trial court the additional evidence it intended to put on in the equitable phase. In its trial brief, the Ranch simply wrote it "must be allowed to present further evidence in support of [its] equitable relief and th[e] Court must make a determination on the merits of [its] claim for equitable relief." The Ranch thereafter argued it *had* made a prima facie case for

16

equitable relief because neither injunctive relief nor specific performance requires harm or damages.

The Ranch did not in its trial brief or during the hearing that followed make an offer of proof as to the evidence it intended to present in the subsequent bench trial. An offer of proof was necessary in order for us to assess prejudice on appeal. (See *People v. Anderson* (2001) 25 Cal.4th 543, 580 [rule requiring offer of proof in the trial court (Evid. Code, § 354, subd. (a)) "is necessary because, among other things, the reviewing court must know the substance of the excluded evidence in order to assess prejudice"]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282 ["the failure to make an adequate offer of proof in the court below ordinarily precludes consideration on appeal of an allegedly erroneous exclusion of evidence"].) The Ranch's view that it "suffered irretrievable prejudice" because "the scope and contents of [the additional evidence it could have offered] can no longer be ascertained" thus rings hollow.

An offer of proof was also necessary for us to determine whether there was a denial of due process rights. As the Ranch acknowledges, a party's due process right "to present evidence is limited to [the presentation of] *relevant* evidence of significant probative value to the issue before the court." (*Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1147, italics added.) Here, the Ranch had an opportunity to present its case to the jury. The only question is whether the trial court denied the Ranch's due process rights to present *additional* evidence in the equitable phase of the trial. The Ranch has the burden of proving the trial court violated its rights in that regard; it has not, however, presented us with any basis for concluding the trial court excluded evidence relevant to and probative of its equitable claims.

Finally, to the extent the Ranch attempts to challenge the trial court's decision to conduct the legal phase of the trial first, the argument has been forfeited for failing to raise the argument under a separate and identifiable heading and failing to acknowledge and apply the abuse of discretion standard of review pertinent to the trial court's decision.

17

(*Pizarro v. Reynoso*, *supra*, 10 Cal.App.5th at p. 179; *Ewald*, *supra*, 13 Cal.App.5th at p. 948.)

## II

### *The Trial Court Was Bound By The Jury's*
### *Factual Findings On Common Issues*

It appears the Ranch asserts the trial court was not bound by the jury's special verdict findings because the Ranch's rights under the Agreement and the 1990 Judgment were equitable claims "that were not and could not have been addressed by the jury." The Ranch asserts it "needed no special verdict findings to qualify for complete equitable enforcement of its *stipulated judgment and easement claims*," because its rights are "independently enforceable in equity." (Boldface omitted.) While the Ranch did not *need* the jury's special verdict findings to obtain equitable relief, the trial court was *bound* by the jury's factual findings in considering whether equitable relief could issue.

"Historically, there were separate law and equity courts. [Citation.] The law courts dealt with ordinary property rights, debts, and trespasses and adjudicated disputes by live testimony before a lay jury. [Citation.] The equity courts dealt with ethical matters and adjudicated disputes by written testimony before a judge. [Citation.] The separate law and equity courts were merged, but the distinction between law and equity remains to this day. The right to a jury trial for civil actions is generally limited to those causes of action (and their analogues) that were historically triable in a court of law. [Citations.] Those causes of action that were historically tried to a judge remain triable to a judge today because it is thought that the exercise of equitable powers 'depend[s] upon skills and wisdom acquired through years of study, training and experience which are not susceptible of adequate transmission through instructions to a lay jury.' [Citation.]

"While the judge determines equitable causes of action, the judge may (in rare instances) empanel an advisory jury to make preliminary factual findings. [Citation.] The factual findings are purely advisory because, on equitable causes of action, the judge

18

is the proper fact finder. [Citation.] '[W]hile a jury may be used for advisory verdicts as to questions of fact [in equitable actions], it is the duty of the trial court to make its own independent findings and to adopt or reject the findings of the jury as it deems proper.' [Citation.] In contrast, a judge is bound by a jury's verdict rendered on legal causes of action. [Citation.] A jury is not 'a mere advisory body' in deciding legal causes of action. [Citation.] It has long been held that, 'where a party is entitled to a jury as a matter of right, the court is without authority to enter a judgment contrary to the verdict and that the determination of a jury is conclusive unless set aside upon the granting of a motion for a new trial or unless the general verdict is inconsistent with special findings of fact made by the jury.' [Citation.]

"Complications arise when legal and equitable issues (causes of action, requested remedies, or defenses) are asserted in a single lawsuit. The lawsuit is rarely treated as a single unit for purposes of determining the right to a jury trial. [Citations.] In most instances, separate equitable and legal issues are 'kept distinct and separate,' with legal issues triable by a jury and equitable issues triable by the court. [Citations.]

"The order of trial, in mixed actions with equitable and legal issues, has great significance because the first fact finder may bind the second when determining factual issues common to the equitable and legal issues." (*Hoopes*, *supra*, 168 Cal.App.4th at pp. 155-156.) In cases where legal issues are tried before equitable ones (as was done here), it is "clear that a jury's determination of legal issues may curtail or foreclose equitable issues" (*id.* at p. 157) and "the trial court must follow the jury's factual determinations on common issues of fact" (*id.* at p. 158).

"[T]here are solid policy reasons for giving one fact finder's determinations binding effect in a mixed trial of legal and equitable issues. The rule minimizes inconsistencies, and avoids giving one side two bites of the apple. [Citation.] The rule also prevents duplication of effort." (*Hoopes*, *supra*, 168 Cal.App.4th at p. 158.)

19

As explained in *Hoopes*, a trial court is bound by the jury's factual findings on factual issues common to the legal and equitable claims, as the trial court explained here. We see no reason to address the Ranch's attempts to distinguish *Hoopes* or its arguments that (1) the Ranch is not urging defiance of jury factfinding but instead offering interpretations of the jury's findings that support equitable relief; (2) the trial court was not asked to substitute its own factfinding for that of the jurors but instead to "complete" the verdict "by supplying equitable remedies based on separate equitable elements and findings"; and (3) the trial court in *Hoopes* usurped the jury's role and altered its findings "outside the scope of regular new trial review." None of those arguments assist in determining whether the trial court erred in this case.

III

*The Jury's Permission Finding On Trespass Stands*

The Ranch challenges the jury's trespass finding that the Department did not enter the Ranch's property without permission. It argues, "The jury's permission finding on trespass is contrary to law and unsupported by substantial evidence" and thus does not bar equitable relief. (Boldface omitted.) We disagree.

Initially, the Ranch asserts a landowner may revoke a person's permission to use the landowner's land at any time. In that vein, the Ranch argues "the permission finding is hopelessly ambiguous or incomplete" (boldface omitted) "because it did not address any of the indisputable evidence of revocation, inform the jury of the effect of revocation, or explain how the jury should address this evidence." The Ranch further asserts, "The jury's failure to render a verdict with findings on the dispositive issue of revocation of permission was also compounded by fatal omissions in the jury instructions." The Ranch relies on two trial exhibits and its complaint to show that revocation was at issue in this case. We reject the arguments for several reasons.

20

First, the Ranch's argument hinges on two trial exhibits, neither of which are properly before us because we have denied the Ranch's request to submit the trial exhibits late, as explained *ante*.

Second, the Ranch did not raise the argument that the special verdict was ambiguous or incomplete in the trial court. We can find no objection or request in the record and the Ranch identifies none. An objection to the form of questions in a special verdict must be raised in the trial court or the issue may be deemed forfeited on appeal. (*Orient Handel v. United States Fid. & Guar. Co.* (1987) 192 Cal.App.3d 684, 700.) The Ranch also did not raise the ambiguity or incompleteness concern with the trial court after the jury rendered its verdict, nor did it ask to have the jury correct or clarify the verdict before the court discharged the jury. (Code Civ. Proc., § 619 ["When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the Court, or the jury may be again sent out"].) " 'Failure to object to a verdict before the discharge of a jury and to request clarification or further deliberation precludes a party from later questioning the validity of that verdict if the alleged defect was apparent at the time the verdict was rendered and could have been corrected.' " (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 263-264, italics omitted.) Here, the alleged defect in the special verdict was apparent at the time the verdict was rendered and could have been corrected, if necessary and appropriate. The Ranch further did not preserve the issue by raising it in a motion for new trial. (*All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1220 [challenge to use of verdict forms may be raised for first time in motion for new trial].) In its new trial motion, the Ranch merely argued there was no evidence of consent to support the jury's finding. For these reasons, we deem the Ranch's ambiguity and incompleteness argument forfeited.

Third, to the extent the Ranch is asserting the trial court erred in failing to instruct the jury that permission may be revoked, we disagree. A trial court's duty "is fully

discharged if the instructions given by the court embrace all the points of the law arising in the case." (*Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 335.) The Ranch has not shown that the issue of revocation was closely and openly connected with the facts presented at trial. Further, a plaintiff who fails to request any additional or qualifying instructions forfeits the right to argue instructional error on appeal. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130-1131.)

We also find no merit in the Ranch's argument that no substantial evidence supported the jury's permission finding. " 'We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal. Under this test, " 'we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . "In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing*." [Citation.] All conflicts, therefore, must be resolved in favor of the respondent.' " [Citation.]

" 'But this test is typically implicated when a defendant contends that the plaintiff *succeeded at trial in spite of insufficient evidence*. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case [citations].

" 'Thus, where the issue on appeal turns on *a failure of proof at trial*, the question for a reviewing court becomes *whether the evidence compels a finding in favor of the appellant as a matter of law*. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was

insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465-466, italics added in last two paragraphs.)

Here, the case posed evidentiary conflicts. The Ranch had the burden to prove the Department did not have permission to enter its property. The jury concluded the Ranch failed to carry this burden. The Ranch relies on two excluded trial exhibits and its complaint in seeking to reverse the jury's verdict. Plainly, the Ranch has not shown it was entitled to a finding in its favor as a matter of law.

For these reasons, the jury's permission finding on trespass stands.

IV

*The Trial Court Did Not Misinterpret The Jury's Special Verdicts*

The Ranch challenges the trial court's interpretation of the jury's special verdicts on the breach of contract and nuisance causes of action in determining equitable relief was unwarranted. We analyze the special verdict form de novo and find no merit in these arguments. (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 678.)

A

*Nuisance*

The Ranch argues the trial court erred in finding injunctive relief was barred by the jury's nuisance findings that the conditions created by the Department did not substantially interfere with the Ranch's use or enjoyment of its land. The Ranch asserts no case "has addressed the question of what elements may be required to obtain *injunctive relief* against a private nuisance as compared with damages." The Ranch argues, "Under the Restatement[ Second of Torts] rule, the Ranch might seek an injunction against an interference with the use and enjoyment of Ranch property that was

23

unreasonable. Substantial or significant present harm would not be necessary." We disagree.

"Unlike public nuisance, which is an interference with the rights of the community at large, private nuisance is a civil wrong based on disturbance of rights in land. [Citation.] . . . [T]o proceed on a private nuisance theory the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land. The injury, however, need not be different in kind from that suffered by the general public." (*Koll-Irvine Center Property Owners Assn. v. County of Orange* (1994) 24 Cal.App.4th 1036, 1041.) In *San Diego Gas & Electric Co.*, our Supreme Court, in part relying on the Restatement Second of Torts, identified two additional elements to establish a private nuisance. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 937-938.) "The first additional requirement for recovery of damages on a nuisance theory is proof that the invasion of the plaintiff's interest in the use and enjoyment of the land was substantial, i.e., that it caused the plaintiff to suffer 'substantial actual damage' " (substantial damage requirement). (*Id*. at p. 938.) "The second additional requirement for nuisance is superficially similar but analytically distinct: 'The interference with the protected interest must not only be substantial, but it must also be unreasonable' [citation], i.e., it must be 'of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land' " (unreasonable interference requirement). (*Ibid*., italics omitted.)

The Ranch asks us to "reexamine California nuisance law in light of the position taken by the *Restatement Second of Torts*" in sections 821F and 822. The Restatement Second of Torts, section 821F, comment b, page 105 provides the significant harm requirement "applies only to tort liability in an action for damages." The Restatement Second of Torts, section 822, comment d, pages 110 to 111 provides: "Action for damages distinguished from suit for injunction. A potent cause of confusion as to the meaning and scope of private nuisance lies in the failure to distinguish the action at law

24

from the suit for injunction in equity.  Cases in equity are cited as precedents in actions at law without regard to their differences."  (Italics omitted.)

Although our Supreme Court cited to the Restatement Second of Torts, in addition to other treatises, when it identified the substantial damage and unreasonable interference requirements as elements of a private nuisance cause of action, the court did not expressly limit its holding to claims for damages.  The Ranch cites to no case (nor have we found one) that limits *San Diego Gas & Electric Co.* to an action for damages.  To the contrary, the Fourth District Court of Appeal has applied the substantial damage and unreasonable interference requirements to a case involving solely a request for injunctive relief.

In *Mendez*, homeowners filed a complaint against a resort for, among other things, private nuisance seeking a permanent injunction for violation of zoning and noise ordinances.  (*Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248, 254-255, 258.)  The *Mendez* court held the substantial damage and unreasonable interference requirements were applicable and consequential in a complaint seeking only a permanent injunction for a private nuisance.  (*Id.* at pp. 262-263.)  The *Mendez* court stated, "[P]laintiffs still must demonstrate that the use of this public address system in this way constitutes an interference with plaintiffs' use and enjoyment of their land that is substantial and unreasonable."  (*Id.* at p. 270, italics omitted.)

We find no basis for disagreeing with the *Mendez* court's conclusion that the substantial damage and unreasonable interference requirements apply in a case seeking injunctive relief for a private nuisance.

Here, the jury found the Ranch failed to prove the conditions of which the Ranch complained substantially interfered with the Ranch's use or enjoyment of its land.  The Ranch thus failed to prevail on its private nuisance causes of action and no injunctive relief was available.  (*Mendez v. Rancho Valencia Resort Partners, LLC*, *supra*, 3 Cal.App.5th at p. 260 [" ' "A permanent injunction is a determination on the merits that

25

a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate" ' "].)

## B

### *Breach Of Contract*

The Ranch asserts the trial court erred in interpreting the breach of contract special verdict as a finding that the Ranch failed to establish a breach of contract. The Ranch believes the special verdict findings support equitable relief because "the jury agreed with the Ranch that it had performed the contract *and* that the [Department] had breached the contract in multiple respects." The Ranch posits the jury's "no harm" finding simply means it found no damages to award, which has no bearing on its equitable claims. We disagree.

"To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." (*Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532, 1545.) "Implicit in the element of damage is that the defendant's breach *caused* the plaintiff's damage." (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1352.) "Civil Code section 3300 [also] generally requires proof of causation: 'For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment *proximately caused thereby*, or which, in the ordinary course of things, *would be likely to result therefrom*.' " (*Troyk*, at p. 1352.)

Here, it was undisputed the Ranch and the Department had a contract. The jury found: The Ranch did all or substantially all of the significant things it was required to do under the contract; the Department "fail[ed] to do something that the contract required it to do or do something the contract prohibited it from doing"; and the Ranch was not harmed. In considering the Ranch's request for a bench trial on its equitable claims, the trial court said the jury "did not find that a breach of contract cause of action was

26

established" because it determined the Ranch was not harmed by the Department's breach.

The Ranch asserts "[h]arm is not expressly defined in the special verdict or in the contract elements in the court's instructions" and must thus be "defined and understood in the context of the entire body of instructions." The Ranch urges the term "is used throughout the court's instructions and in the trial of this case to refer only to damages, i.e., compensation measurable in monetary terms and awarded on account of specific past events, i.e., damage to the [low-water crossing]. When the instructions are read as a whole and in context as they must be, harm equals [low-water crossing] money damages – nothing else." (Italics omitted.)

We interpret the special verdict by considering its language in connection with the pleadings, evidence, and instructions, and conclude it was clear to the jury that the term "harm" was not synonymous with damages, as the Ranch asserts. (*Woodstock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456-457.)

The special verdict form required the jury to answer "yes" to the following two questions *before* it could consider the question of damages: (1) Was the Ranch "harmed" by the Department's failure to do something that the contract required it to do or because it did something the contract prohibited it from doing; and (2) was the Department's breach of contract a substantial factor in causing the Ranch's "harm"? The jury answered no to the first question and did not address the second. The unanswered damages portion of the special verdict form asked: "What are Connolly Ranch's breach of contract damages for damage to the SRI crossing?"

The trial court instructed the jury: "[The] Ranch claims that the Department . . . breached its obligations under the contract by allowing public use other than at designated crossings, failing to designate crossings and exclude the public from the easement, damaging the low-water crossing and adjacent paved road, failing to maintain and repair areas of the easement road open to the public, failing to fence and install signs,

27

[and] unreasonably interfering with [the] Ranch's use and enjoyment of the easement. [¶] [The] Ranch claims that the Department['s] breaches of the contract caused damage to the low-water crossing and adjacent paved road for which the [Department] should pay."

The trial court further instructed the jury: "To recover damages from the Department . . . for breach of contract, [the] Ranch must prove all of the following: That [the] Ranch and the Department . . . entered into a contract. This fact is not in dispute. That [the] Ranch did all or substantially all of the significant things that the contract required it to do. That the Department . . . failed to do something that the contract required it to do. That [the] Ranch was harmed and that the Department['s] breach of contract is a substantial factor in causing [the] Ranch's harm." The trial court then instructed the jury on the question of damages, as follows: "If you decide that [the] Ranch has proved its claim against the Department . . . for breach of contract, you also must decide how much money will reasonably compensate [the] Ranch for the harm caused by the breach. This compensation is called damages. The purpose[] of such damages is to put [the] Ranch in as good a position as it would have been if the Department . . . had performed its promise."

From the foregoing, it is clear the term "damages" was used to denote a sum of money, whereas the term "harm" was used to denote an injury or loss proximately caused by the Department's breach. The jury thus understood it could find harm occurred but could nonetheless decide not to award damages as compensation. Indeed, the special verdict form allowed the jury to assess an amount for damages only if it first found that the Ranch was harmed by the breach of contract, the Department's breach of contract was a substantial factor in causing the Ranch's harm, and none of the Department's affirmative defenses applied.

Plainly, the jury found the Ranch failed to prove an element of its breach of contract cause of action, i.e., proximate causation. The trial court thus did not err in its interpretation of the special verdict.

28

*The Trial Court Did Not Deny The Ranch A*

*Fair Hearing On Its Equitable Claims*

The Ranch argues the trial court's posttrial rulings were infected with prejudicial errors that denied it a fair hearing on its equitable claims, because: (1) there were no legal deficiencies in the Ranch's declaratory and injunctive relief claims; (2) the injunctive relief claims should have been tried on their merits; (3) the declaratory relief claims should also have been tried on their merits; (4) the trial court "erred in refusing to enter a declaratory judgment based on its legal rulings regarding the [1990 Judgment and the Agreement] or trying any remaining defenses in equity or bench trying the remaining claims and defenses" (boldface omitted); and (5) the trial court "erred in dissolving its two preliminary injunctions against the [Department] without considering permanent injunctive relief" (boldface omitted).

We do not specifically address the Ranch's arguments under the heading, "there were no legal deficiencies in the Ranch's declaratory and injunctive relief claims." (Boldface & capitalization omitted.) The arguments presented under that heading, to the extent they raised an issue for determination, are addressed and rejected elsewhere in this opinion.

A

*The Trial Court Did Not Abuse Its Discretion In Denying*

*The Ranch's Permanent Injunctive Relief Request*

The Ranch argues the trial court's application of Code of Civil Procedure section 526 was erroneous because: (1) "the [1990 Judgment and the Agreement] are in a different legal class than mere claims for breach of an ordinary contract"; and (2) the Ranch is entitled to specific performance because "it satisfies prima facie all the elements of specific performance – even without ever having been given the opportunity to present

any evidence directed to those elements" (italics omitted).[3] We find no merit in these arguments.

Neither of the two cases cited by the Ranch provides any insight into the Ranch's claim of error. (Citing *Aspen Grove Condominium Assn. v. CNL Income Northstar LLC* (2014) 231 Cal.App.4th 53, 63-64, *LeDeit v. Ehlert* (1962) 205 Cal.App.2d 154, 158-159.) There is no quibble with the general propositions tendered by the Ranch that "an injunction to protect property or easement rights may be awarded even if a jury awards [z]ero [d]amages" (italics omitted) and the consideration of equitable relief falls within the province of the trial court, and not the jury. There is also no quibble with the argument that the 1990 Judgment and the Agreement may be enforced in equity.[4] The quibble lies with whether the trial court erred in denying the Ranch's request for a permanent injunction. As already explained, " ' "[a] permanent injunction is a determination on the merits that a plaintiff *has prevailed on a cause of action* . . . against a defendant and that equitable relief is appropriate." ' " (*Mendez v. Rancho Valencia Resort Partners, LLC*, *supra*, 3 Cal.App.5th at p. 260, italics added.) Here, as noted by the trial court, the Ranch failed to prevail on any of its causes of action against the Department. The Ranch fails to explain why, that being the case, it is nonetheless entitled to a permanent injunction.

---

[3] As noted *ante*, the trial court denied the request for a permanent injunction under both Code of Civil Procedure section 526 and Civil Code section 3422. The Ranch does not challenge the trial court's denial of a permanent injunction under Civil Code section 3422, except to attack the trial court's interpretation of the jury verdicts, which we have already addressed.

[4] We further agree the trial court has the power to compel obedience and enforce compliance with its judgments, as the Ranch asserts. The Ranch did not, however, bring a motion to compel in this case.

30

As to the Ranch's specific performance argument, the Ranch fails to acknowledge that it *did not seek specific performance in its operative complaint.* The trial court treated the Ranch's specific performance argument as a request for leave to amend the complaint to " 'conform to proof' " and denied the request. The trial court's denial of a request for leave to amend the complaint to conform to proof "will not be disturbed on appeal unless it clearly appears that such discretion has been abused." (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.) The Ranch does not acknowledge the applicable standard of review, or present its argument tailored to that standard of review. The Ranch, instead, asks us to independently determine that it has satisfied the elements for specific performance. We decline to do so and deem the argument forfeited. (*Ewald*, *supra*, 13 Cal.App.5th at p. 948 [failure to tailor argument to the applicable standard of review is a concession of lack of merit].)

In conclusion, the Ranch has presented no meritorious argument challenging the trial court's denial of permanent injunctive relief.

B

*The Trial Court Did Not Abuse Its Discretion*

*In Denying Declaratory Relief*

"Declaratory relief is available to a party 'who desires a declaration of his or her rights or duties with respect to another . . . .' [Citation.] A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties and requests that the rights and duties of the parties be adjudged by the court." (*Monterey Coastkeeper v. California Regional Water Quality Control Bd., etc.* (2022) 76 Cal.App.5th 1, 13.) "A party seeking declaratory relief must show a very significant possibility of future harm." (*Ibid*.)

A trial court "may refuse to exercise the power granted" by the Code of Civil Procedure as to declaratory relief, "in any case where its declaration or determination is

not necessary or proper at the time under all the circumstances." (Code Civ. Proc., § 1061.) "Whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion and the court's decision to grant or deny relief will not be disturbed on appeal unless it is clearly shown its discretion was abused." (*Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974.)

The Ranch argues the trial court had "no discretion to refuse declaratory relief in this case for two reasons": (1) the trial court "ignored both constraints" that it had to exercise its discretion "only within legal bounds *and* after consideration of all material facts"; and (2) "the court also disregarded the established rule that there is *no discretion* to refuse declaratory relief in cases where the parties have ongoing permanent jural relationships – such as easements or property rights or perpetual contracts embodied in consent judgments – that require the court's guidance in resolving disputes regarding their continuing rights and duties." (Citing *Steinberg v. Chiang* (2014) 223 Cal.App.4th 338, 343-344.)

The Ranch's first assertion of error hinges on the argument that the trial court "allowed and considered *no evidence*" before exercising its discretion and "it got the law of declaratory relief wrong." First, the trial court heard the evidence presented during the jury trial; the Ranch's assertion the trial court considered *no* evidence is thus incorrect. Second, the Ranch provides no analysis or reasoning as to how the trial court purportedly "got the law of declaratory relief wrong."

The trial court set forth the law pertinent to declaratory relief, noting among other things, "declaratory relief 'need not be awarded if the circumstances do not warrant.' " (Quoting *Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 930.) The trial court noted the Ranch sought a declaration of what the Department "may and may not do; what is allowed and what is not allowed under the [1990 Judgment and the Agreement]." (Boldface omitted.) The trial court explained there was no existing controversy for determination because the jury found the Department breached the 1990

32

Judgment and the Agreement but found the Ranch suffered no harm. The trial court further wrote "[a] judicial determination of what is or is not allowed under the [1990 Judgment and the Agreement] resolves nothing" because the documents "set[] forth the contract terms." Any future controversy, the trial court explained, would be "whether [the] Ranch has been harmed and whether damages or other equitable relief is warranted." (Boldface omitted.) The Ranch presents no argument as to why the foregoing analysis constitutes an abuse of discretion or is contrary to established law discussed *ante*.

We also find no merit in the Ranch's second argument. Nothing in *Steinberg* provides that the trial court had *no* discretion to deny declaratory relief in this case. In that case, the parties disputed whether the State Controller rightfully decided a budget bill was not balanced when the bill's revenue estimates exceeded the total appropriations and thus warranted withholding legislators' salaries until the Legislature presented a balanced budget to the Governor. (*Steinberg v. Chiang*, *supra*, 223 Cal.App.4th at pp. 341-342.) This court held declaratory relief was proper because the State Controller's responsibility for distributing legislative salaries created an ongoing relationship between the parties, "the refusal to grant declaratory relief would work a serious hardship on the Legislature" in that it put the Legislature at risk for even more forfeited wages, and the parties continued to disagree over events that were reasonably expected to recur. (*Steinberg*, at pp. 345; *id*. at pp. 343-344.)

While it is true that one of the factors this court considered in *Steinberg* to determine whether the trial court abused its discretion in denying declaratory relief was whether the parties had an ongoing relationship, another key factor was whether the refusal to grant relief *would cause a serious hardship* on one of the parties. (*Steinberg v. Chiang*, *supra*, 223 Cal.App.4th at pp. 343-344.) It is this latter factor that the trial court found lacking in this case. Indeed, the trial court expressly stated, "the jury found that [the department] ha[d] breached the easement/contract, but also found that such breaches

33

– to date – have not harmed [the] Ranch" and thus, "after the jury verdict, there is not a controversy about what is or is not allowed under the easement/contract." (Boldface omitted.) The Ranch does not attempt to explain with reasoned analysis why the trial court abused its discretion in that regard.

The Ranch further merely asserts the jury's special verdict did not resolve "many of the Ranch's claims – including those pertaining to protection of the easement and the Ranch's property." That assertion does not, in and of itself, establish that the trial court abused its discretion. Nothing in *Doan*, a case upon which the Ranch relies and the application of which is unsupported by any reasoned analysis, leads us to the conclusion that the trial court had *no discretion* but to grant the declaratory relief requested. (Citing *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1095-1096.)

C

*The Ranch Has Shown No Error Regarding The Trial*
*Court's Denial Of Its Request To Enter The Contract*
*Interpretation Findings As A Declaration In The Judgment*

The Ranch argues, "The court erred in refusing to enter a declaratory judgment based on its legal rulings regarding the [1990 Judgment and the Agreement] or trying any remaining defenses in equity." (Boldface omitted.) The Ranch merely notes the trial court instructed the jury with its prior legal ruling interpreting the 1990 Judgment and the Agreement and then summarily states the trial court "could also have included other easement issues." The Ranch continues: "If, as the court intimated, the [Department] had unresolved defenses that might have affected the provisions it interpreted, it could have allowed the promised equitable phase of trial to address those defenses. What the court could not do was enter the judgment against the Ranch in the face of its legal rulings in its favor. Reversal is required."

The Ranch provides no reasoned argument with citation to authority for the foregoing proposition, nor does it identify and apply the pertinent standard of review.

34

We thus disregard the argument. (*United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153; *Ewald*, *supra*, 13 Cal.App.5th at p. 948.) It is true the trial court interpreted the 1990 Judgment and the Agreement as unambiguous and clear when it ruled on three of the parties' motions in limine. The trial court's ruling in that regard does not, standing alone, support a conclusion that the trial court erred when it declined to include the interpretation in the judgment. The trial court explained there was no pending case or controversy requiring declaratory relief regarding the interpretation of the Agreement and the 1990 Judgment. The Ranch does not explain how that finding was erroneous.

## D

### *The Trial Court Did Not Err In Dissolving The Preliminary Injunctions*

The Ranch argues, "The court erred in dissolving its two preliminary injunctions against the [Department] without considering permanent injunctive relief." (Boldface omitted.) The Ranch discusses the two preliminary injunctions issued prior to trial and summarily states: "In the face of the two injunctions, the court should at least have held the equitable phase hearing to address a permanent resolution of the matters enjoined in light of the evidence." We do not address this argument because the Ranch provides no reasoned argument with citation to authority for the foregoing proposition, nor does it identify and apply the pertinent standard of review. We thus disregard the argument. (*United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153; *Ewald*, *supra*, 13 Cal.App.5th at p. 948.) Moreover, as already established, the trial court *did* consider whether to grant a permanent injunction and determined it was unwarranted under the facts of this case. The Ranch further did not object when the trial court dissolved the preliminary injunctions. We thus see no basis for concluding the trial court abused its discretion in dissolving the preliminary injunctions.

## VI

### *The Trial Court Did Not Err By Excluding Job's Testimony*

The Department filed a motion in limine to limit the testimony of Job, plaintiff's disclosed expert, regarding his proposed cost allocation formula for repair of the low-water crossing, his opinion "on excess sedimentation," and his opinion regarding the original design of the low-water crossing. Following an Evidence Code section 402 hearing, the trial court found Job was not qualified to testify "regarding the cost allocation in this particular case" because he did not have "a proper basis for the opinion." The trial court further found Job did not have "a proper basis" to give an opinion that there was "an excessive or very high sediment load at the site." The Ranch challenges the trial court's findings in that regard.

The Ranch argues the trial court committed prejudicial error by excluding Job's testimony because the trial court misunderstood or misperceived the law and thus per se abused its discretion under *Sargon*. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 (*Sargon*).) The Ranch asserts it can show prejudice because: (1) the trial court's decision to admit or exclude expert evidence is not unlimited and implicates the party's ability to present its case; and (2) the Department's "overarching theme in oral argument was that there was nothing 'substantial' in any aspect of the Ranch's case." We find no basis for concluding the trial court misunderstood or misperceived the scope of its discretion under *Sargon*.

Evidence Code section 801 provides: "If a witness is testifying as an expert, his [her or their] testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." Under Evidence Code section 801, "the trial court acts

36

as a gatekeeper to exclude speculative or irrelevant expert opinion." (*Sargon*, *supra*, 55 Cal.4th at p. 770.) " '[T]he expert's opinion may not be based "on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors . . . . [¶] Exclusion of expert opinions that rest on guess, surmise or conjecture [citation] is an inherent corollary to the foundational predicate for admission of the expert testimony: will the testimony assist the trier of fact to evaluate the issues it must decide?" ' " (*Ibid.*)

Evidence Code section 802 also imposes an important gatekeeping function on the trial court. That statute provides: "A witness testifying in the form of an opinion may state . . . the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion. The court in its discretion may require that a witness before testifying in the form of an opinion be first examined concerning the matter upon which his opinion is based." (Evid. Code, § 802.) "This section indicates the court may inquire into the expert's reasons for an opinion. It expressly permits the court to examine experts concerning the matter on which they base their opinion before admitting their testimony. The *reasons* for the experts' opinions are part of the matter on which they are based just as is the *type* of matter. Evidence Code section 801 governs judicial review of the *type* of matter; Evidence Code section 802 governs judicial review of the *reasons* for the opinion. 'The stark contrast between the wording of the two statutes strongly suggests that although under [Evidence Code] section 801[, subdivision ](b) the judge may consider only the acceptability of the generic type of information the expert relies on, the judge is not so limited under [Evidence Code] section 802." (*Sargon*, *supra*, 55 Cal.4th at p. 771.)

"Thus under Evidence Code sections 801, subdivision (b), and 802, the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative." (*Sargon*, *supra*, 55 Cal.4th at pp. 771-772.) "Except to the extent the trial court bases its ruling on a conclusion of law

(which we review de novo), we review its ruling excluding or admitting expert testimony for abuse of discretion." (*Id*. at p. 773.)

In its opening brief, the Ranch focuses on Job's qualifications, even as to the basis for Job's opinions, and relies solely on Evidence Code section 801, arguing Job's opinions "arose directly from his expertise and experience" with regard to low-water crossings. The trial court was, however, specific that it was excluding Job's testimony because he did not have "a proper basis" for his opinions, which falls within the trial court's discretion under Evidence Code section 802. The trial court did not exclude Job's testimony because he was not qualified to give opinions regarding the *type* of matter proposed, but instead excluded it because it found no basis for Job's *reasons* in reaching the opinions he proposed to relate to the jury. We find no abuse of discretion in that regard.

A

*The Trial Court Did Not Abuse Its Discretion*

*By Excluding Testimony Regarding The Cost Allocation Formula*

During the Evidence Code section 402 hearing, Job, a civil engineer who has designed "about six" low-water crossings and has dealt with "maintenance and operation of dozens of them," testified he inspected the low-water crossing at issue in this case by spending the better part of a morning evaluating the site and walking up and down the stream for approximately 250 feet in each direction. Job took photographs and looked at the condition of the road, "evidence of erosion," and the split rail fence. He observed broken and cracked concrete, exposed rebar, "some spalled concrete," "a fair amount of gravel, bedload from the stream that had imbedded itself in the mouth of the culverts," and "a significant amount of erosion that resulted when the stream evulsed around the low-water crossing and went coursing down the road." When asked what factors "might have damaged the low-water crossing," Job responded, "[t]here are several modes of failure for those types of structures"—geomorphologic factors (i.e., things that are caused

38

by the stream), erosion, sediment deposition, the bedload that moves through a culvert, and "the impact of the concrete, the cracks, and the exposed rebar."

As to the cause of the damage to the low-water crossing, Job testified he considered the split rail fence that accumulated a large amount of weighted debris and organic material, the broken concrete and exposed rebar, and the traffic "on the upstream inlet to those culverts which tends to compact the gravel." He also considered the impact of "the February 2017 storm" in his opinions but provided no further clarification in that regard.

Job explained he created a formula that he had previously used in prospective applications and applied the formula retrospectively in this case. The formula is generally accepted to be reliable in the scientific community. The "inputs" of the formula were based on vehicle classes:[5] light vehicles, such as cars and light pickups; medium trucks, approximately 15,000 pounds to 45,000 pounds; and, heavy trucks, like water trucks, cement trucks, or a semi-truck. Job then made assumptions about the velocity at which those vehicle classes would travel across the low-water crossing. He explained a vehicle's weight and its velocity of travel creates an impact on the road; the greater the speed of travel, the greater the impact on the road by a square function. For example, if a vehicle goes four miles per hour rather than two miles per hour, it will have eight times more of an impact on the road "because of the square function."

Job first "determined an estimate for the impact of a light vehicle," and then divided the other classes "by that impact for the light vehicle," meaning the "light vehicle is [the] one for reference, and then the other classes of vehicles had other numbers based on their weight and velocity." Job acknowledged the formula was not perfect and

---

[5] Job referred to four vehicle classes but only discussed three vehicle classes. From the record, it appears the fourth vehicle class pertained to dirt bikes, but that class was not mentioned during the Evidence Code section 402 hearing.

explained, in order for the formula to be perfect, there would have to be "a tollbooth [at the low-water crossing] that had a weigh station attached to it." Job testified, if he were provided assumptions as to vehicle weights and number of trips across the low-water crossing by various vehicles, he could use the hypothetical inputs in his formula.

During cross-examination, Job acknowledged his cost allocation was based on prospective application and testified the equation allocated the "use factor, load factor . . . based on trips only" and did "not include weather." Job acknowledged, "There are multiple sources of wear and tear on the road. One of them is traffic. The other is weather." He also explained that traffic on a wet road "causes more damage." Job further testified that "weather damaged the crossing at some point," "[c]ompounded by the ridiculous split rail fence built in a floodplain." Despite these causes of damage, Job acknowledged neither the weather nor the constructed features in the floodplain was taken into account in his cost allocation formula. Job explained the formula envelops "all of the factors [he] found contributed to damage to [the] SRI crossing" "by saying that whoever used it the most gets to pay the most share for the weather." He continued: "The weather doesn't happen just to the property owner. It doesn't happen just to somebody else. It says that the weather happens to everybody and everybody based on their use of the structure then gets to pay a share of that weather-related damage." When asked whether the retroactive application of the formula was "reasonably certain to divide up costs based on what actually happened or is . . . just useful as an approximation," Job responded it "is an approximation."

After the Department noted Job's opinion as to the cost allocation "is literally only based on [a] number of trips" and "doesn't take into [account] storm damage," the trial court said Job's proposed testimony was not "a proper opinion." During redirect, Job noted there was damage caused "to the low-water crossing by the railing that was presented" but explained, although his "formula d[id] not include a function for weather or maintenance," he took those aspects into account in formulating his opinion. He

40

confirmed his estimate broke apart the impact to the road and asphalt, and the impact to the concrete "would be use related, wear and tear related by users." When asked his opinion concerning the cause of the damage to the low-water crossing, Job said: "My opinion is that many parties, several parties made use of it, took advantage of it and in, you know, most of the venues I've been involved in, people pay a fair share for repair and replacement of structures they enjoy, the use of [*sic*] proportional to their use of the facility." Job reiterated his allocation was just a determination regarding the proportion of use.

The Ranch then addressed the trial court and argued: "The formula applies the wear and tear usage cost allocation formula apprised to the Portland cement concrete structure which was not damaged by the storm event of February 2017. The asphalt portion of it, of the roadway and the channeling that occurred was caused by the storm event and can be separated out. So it is possible to separate these two out. And that's a decision that the jury will have to make, how much is caused by the storm, how much is caused by wear and tear. [¶] He's basically going to be saying the damage to the low-water crossing concrete structure is blank dollars. The damage to the asphalt related to the storm is blank dollars. The jury can reject the formula completely and find it's all due to the storm or it can find that there's no damage due to the storm, it's just strictly wear and tear." The trial court responded that the Ranch had not changed the court's mind because Job did not have "a proper basis for the opinion."

In its opening brief, the Ranch repeatedly addresses Job's qualifications in terms of his education, training, knowledge, skill, and experience but fails to acknowledge or provide any argument as to *how* or *why* the trial court abused its discretion or did not understand the scope of its discretion when it found inadequate the bases for Job's proposed testimony regarding the cost allocation formula. It is clear the trial court excluded Job's testimony regarding the proposed cost allocation formula because the trial court did not believe that Job had an adequate basis for giving an opinion regarding the

application of the cost allocation formula given the *reasons* provided during the Evidence Code section 402 hearing. Job provided no reasons or basis for his usage calculations by vehicle class, or his estimates regarding the velocity of travel pertinent to the different vehicle classes *as to this low-water crossing*. He presented no trip study or other information from which to glean his calculations were anything but speculative. He further acknowledged there were other causes of damage to the low-water crossing but reiterated his damages calculation was based on proportion of use alone. We can find no basis for concluding the trial court abused its discretion by excluding Job's testimony regarding the cost allocation formula. (*Sargon*, *supra*, 55 Cal.4th at p. 772 [the trial court "conducts a 'circumscribed inquiry' to 'determine whether, as a matter of logic, the studies and other information cited by experts adequately support the conclusion that the expert's general theory or technique is valid' "].)

B

*The Trial Court Did Not Abuse Its Discretion*

*By Excluding Testimony Regarding Excess Sediment*

The Department sought to exclude Job's anticipated testimony regarding excess sediment in the watershed. The Department argued Job " 'continually states that excess sediment in the watershed due to [off-highway vehicle use] is partially responsible for the damage, but he did no sediment transport study, did not review any sediment transport study, does not have information about [the Department's] management and did not even visually inspect the [off-highway vehicle] trails he claims are the cause.' "

During the Evidence Code section 402 hearing, Job testified it was his opinion that "[t]he geomorphologic indicators at the site are that there's an excessive sediment load. Not necessarily excessive, but a very high sediment load that's got quite a bit of aggregation or gravel piled up on the upstream side of the low-water crossing." Job said he did not "go out and do any trail surveys or anything like that." He explained he also did not need to review sediment transport studies to reach his conclusion; his review of

42

Google Earth footage and his walk "about 250 feet up and down the channel" led to the conclusion that "there's too much sediment in that stream." When asked whether he attributed all of the sediment to the recreation area, Job said "not at all" but added, "on the other hand, nobody else has a cleanup and abatement order either." He acknowledged, however, he knew that the "watershed also contains the tailing from the Hetch Hetchy mine." The trial court excluded Job's testimony regarding the excess sediment load at the low-water crossing because it did not believe Job had "a proper basis to give that opinion here." The Ranch challenges the trial court's ruling.

As with the cost allocation formula, the Ranch merely relies on Job's qualifications in terms of his education, training, knowledge, skill, and experience but fails to acknowledge or provide any argument as to *how* or *why* the trial court abused its discretion or did not understand the scope of its discretion when it found inadequate the bases for Job's proposed testimony regarding the excess sediment in the watershed. It is clear the trial court excluded Job's testimony regarding excess sediment in the watershed because the trial court did not believe that Job had an adequate basis for the opinion after hearing the *reasons* he articulated in formulating his opinion during the Evidence Code section 402 hearing. We find no abuse of discretion in that regard.

Job's anticipated testimony regarding the Department's role in causing excess sediment in the watershed was speculative; he presented no reasons to support any opinion as to causation or the sources of excess sediment in the watershed. He merely reviewed Google Earth footage and once made a visual observation of the stream. He did not research, analyze, or inspect the causes of the sediment deposits, nor did he inspect and analyze any sediment contributions from the off-highway vehicle trails. Any testimony as to the Department's role in causing sediment deposits was thus unsupported by the material upon which Job sought to rely, and the trial court did not abuse its discretion in excluding such testimony.

43

# VII

## *The Trial Court Did Not Abuse Its Discretion*
## *In Permitting Testimony Regarding Explosive Testing*

The Ranch argues the trial court, "with no explanation, reversed its own ruling on a motion in limine and permitted the [Department] to argue to the jury that SRI [International], a third party, had conducted explosive testing in the surrounding area, even though there was no evidence of any causal connection or demonstrable impact on habitat or Ranch operations." Not so. Not only did the trial court provide an explanation for its ruling, but we also find no basis for concluding it abused its discretion in that regard.

The Ranch filed a motion in limine to exclude reference, argument, evidence, exhibits, maps, drawings, or comments showing or referencing the Lawrence Livermore National Laboratory, Site 300 (laboratory site). The recreation area is located between the laboratory site and the Ranch. The Ranch explained the laboratory site is "an experimental site" and it anticipated the Department was intending to argue that explosions at the laboratory site showed the noise from the Department's activities did not have any effect on the Ranch's property. The trial court agreed with the Ranch.

The trial court explained it believed there was no evidence the Ranch was impacted by the laboratory site and any testimony or evidence regarding the laboratory site was more prejudicial than probative because it "would necessitate mini trials in a trial, confuse issues, and confuse the jury." After hearing further argument, the trial court granted the motion "in its entirety" but cautioned the Department to "[b]e vigilant in case a door happens to be opened."

During trial, the Ranch's expert, John Vollmar, testified there were concerns in marketing a conservation easement on a portion of the Ranch's property that borders the recreation area because incompatible land uses within 0.7 to 1.3 miles from wildlife habitat impact the ability to market and sell the easement. Vollmar acknowledged he was

44

not familiar with SRI International, except for knowing "they own some property in the area" that might be located to the east of the Ranch. Vollmar did not take SRI International into account in performing his analysis and testified that, in his opinion, but for the neighboring recreation area, he would be able to market, sell, and complete a mitigation conservation easement on a 1,000 foot 100-acre area of the Ranch's bordering property.

Fraser Shilling, a retained ecological expert for the Ranch, testified regarding specific species' sensitivity to noise and ground vibrations and how such species react to it. He said loud noises may "reduce the size of the population" of certain species "because they're too sensitive to the type of disturbance, in this case noise" or noise might impact reproductive success. He further testified ground vibrations "can harm" burrowing animals by confusing their natural signals as to when to emerge from the ground.

Shilling performed a sound survey and analyzed the sound impacts generated by the recreation area at different distances from the Ranch; he focused on the sound impacts of motorcycles. He explained the "maximum noise [measurement] is the one that would disturb . . . certain wildlife" and thus "the maximum sound is the biologically most important sound, not the average." Shilling created a map that identified where 45 and greater decibels and 55 and greater decibels, respectively, would reach the Ranch. He explained the map was based on "the state park threshold for motorcycles in State Vehicle Recreation Areas if they were operating near the fence line or at the fence line, the boundary fence." The 45 and 55 decibel levels represented levels at which wildlife would be disturbed. Shilling then testified, in his opinion, a motorcycle in the recreation area is estimated to be a 120-decibel sound source when it climbs a hill and, at the Ranch's property line, would approximately "be the equivalent of [hearing] a freight train" go by.

45

Following Vollmar's and Shilling's testimony, the Department filed an offer of proof regarding the existence of controlled explosions conducted at the laboratory site and on SRI International's property. The Department argued the Ranch's "experts testified to the impacts of surrounding land uses on [the] Ranch's property. The testimony, [taken] together, asserts that, if not for the existence of [the recreation area], these impacts would not exist." The Department explained Vollmar and Shilling both "started from the assumption that [off-highway vehicle] use was the most harmful land use in the area," without accounting for "[t]he existence and activities of [the laboratory site] and SRI International—both neighboring facilities to [the] Ranch['s] Lots A, B, and C." The Department argued the Ranch thus "open[ed] the door for [the Department] to challenge the limited scope upon which the experts' opinions were based."

The Department requested to introduce lay witness testimony to rebut the foundational facts relied on by the Ranch's experts as to noise and vibration. The Department explained the evidence was necessary for the jury to evaluate the Ranch's nuisance cause of action because surrounding land uses are relevant to determining if a normal person would be substantially annoyed by noise—an element of nuisance.

In its written offer of proof, the Department stated Tara DeSilva, a Department employee, could testify regarding her observations about explosions at the laboratory site and the SRI International property, and "may also testify to her own reactions to noise." The Department further argued: "Robert Borunda can testify that SRI International has a remote testing facility directly adjacent to [the] Ranch's Lot C, at issue in this case. According to SRI [International's] own website, SRI [International] operates one of the largest explosively driven shock tube testing facilities in the United States, using up to 100 pounds of explosives at a time. Its clients include the Department of Defense and NASA. [¶] [The laboratory site] is a non-nuclear explosives test facility. It fabricates explosives and conducts outdoor experiments. [¶] Explosions are loud enough at SRI International that SRI [International] notifies the county and the fire department

46

whenever it has an explosion planned for 25 pounds or higher. [Citations.] Explosions are loud enough that, in the past, [the laboratory site] has heard an explosion and called SRI International to do a welfare check. [Citation.] Mr. Borunda of SRI International— SRI International's [person most knowledgeable]—can testify that he has received reports that explosions have been felt as far as downtown Tracy."

The Ranch argued the Department's offer of proof did not "change the fact that there are no sound measurements taken by any expert as to SRI [International]" and thus there was no admissible evidence regarding the explosions. The Ranch further argued it was the Department and not the Ranch who opened the door when the Department asked whether the experts considered SRI International.

The trial court noted, however, the Ranch questioned Shilling regarding wildlife's sensitivity to vibration and noise. The trial court asked the Department for its offer of proof, explaining the Ranch argues "the rulings from the motions in limine on this topic haven't changed at all." The Department responded: "[T]he fact that there are no sound measurements done by [the] Ranch's experts is almost precisely the point because they admitted that these land uses within this range would be relevant to their conclusions"; "lay witness testimony about the experience of sound and vibration is relevant"; and "[the] Ranch -- Mark Connolly has already testified to his experiences with noise and vibration as a layperson, as well as his observations of how his cows respond to noise and vibration, and [the Department] ha[d] a witness who has experienced noise and vibration from SRI International or [the laboratory site]."

The trial court again pressed the Department as to who would present the testimony and what the scope of the anticipated testimony would be. The Department responded DeSilva lives at the recreation area, has felt the vibrations, and has had picture frames falling "off her wall from these explosions." The Department also said Borunda could explain "that explosions have been felt as far away as Tracy." After noting the

Department would likely draw hearsay objections with regard to such testimony, the trial court granted the Department's request.

The trial court explained there was "great detail in [the Department's] offer of proof" and the trial court believed "the door ha[d] been opened, and it's limited." The trial court said the testimony had to be tailored and was "not a free-for-all." In the absence of testimony regarding occurrences on the neighboring properties, the trial court believed "the jury w[ould] have an improper perception," "especially in light of th[e] conservation easement" testimony because the Ranch was "claiming a loss as to marketability of [a] conservation easement." The trial court said it "seem[ed] like [the testimony] would absolutely impact a conservation easement" and the jury had a right to hear the testimony for the limited purpose of determining whether the Ranch's expert gave a proper opinion. The trial court clarified the Ranch could still object to any hearsay statements made during the testimony. The Ranch raised a concern that it might have to call additional witnesses in response to the testimony; the trial court deferred a discussion and decision in that regard.

The trial court later gave the jury the following limiting instruction: "The Court allowed testimony concerning explosive testing at SRI International. This evidence was admitted for the limited purpose of determining the credibility of the evidence and plaintiff's experts Shilling and Vollmar. The evidence should be considered only for this purpose and no other."

The Ranch asserts the trial court "committed prejudicial error in allowing reference to explosive testing." (Capitalization & boldface omitted.) The Ranch first details the proceedings that led to the trial court granting its motion in limine to exclude evidence regarding explosive testing, stating "the court's ruling was impeccably correct." The Ranch next generally discusses the Department's offer of proof and the trial court proceeding in that regard, and then details some of the testimony Borunda and DeSilva presented to the jury thereafter. The Ranch argues "the court's evidence admission

48

order" was based on "pure speculation in defiance of the evidence" and thus constituted "error and abuse of discretion." The Ranch's argument in support of this assertion is somewhat difficult to discern.

To the extent the Ranch attempts to argue the trial court's evidentiary ruling allowing the limited testimony regarding explosions on other properties constituted prejudicial error based on the Department's *offer of proof*, we are not persuaded. The Ranch briefly asserts the Department's "suggestion that the Ranch had somehow 'opened the door' to its admission is fanciful," and DeSilva's and Borunda's testimony was "irrelevant to any issue in the case" and "irrelevant to determining the credibility of any of the Ranch's evidence."

The Ranch, at a minimum, put at issue whether the noise from the recreation area had a substantial impact on the Ranch in terms of its ability to obtain a conservation easement. Vollmar testified the recreation area was an incompatible land use within 0.7 to 1.3 miles of wildlife habitat at the Ranch and, but for the recreation area, he would be able to market, sell, and complete a mitigation conservation easement. Shilling supported Vollmar's testimony by testifying the noise created by motorcycles in the recreation area would disturb wildlife. The Ranch's experts were thus portraying to the jury that the noise from the recreation area was *the reason* the Ranch could not obtain the mitigation conservation easement it was trying to obtain. Vollmar, however, testified he was not familiar with SRI International and did not take activities on that parcel into account in formulating his opinion. This opened the door as to the experts' credibility in determining the recreation area was the "but for" cause for the Ranch not being able to obtain the conservation easement.

The Department made an offer of proof that it had two witnesses who could testify as to explosive testing on parcels adjacent to the Ranch's property. DeSilva, who lives within the recreation area, could testify as to her observations of explosions at the laboratory site and the SRI International property. And Borunda could testify to the

49

nature of the explosions at SRI International. The trial court said the testimony had to be "specifically tailored" and was "not a free-for-all."

We find no basis for concluding the trial court abused its discretion in finding the testimony regarding DeSilva's and Borunda's personal observations and knowledge were relevant to assessing the credibility of the Ranch's experts' opinions. Testimony as to personal observations and knowledge of a given occurrence is not speculative, as the Ranch asserts. (*People v. Rodriguez* (2014) 58 Cal.4th 587, 631 [testimony is not speculative and court did not abuse its discretion in permitting testimony based on the witnesses' personal observations].) Nor must a witness be designated as an expert to testify to such matters. (See *People v. Murphy* (2022) 80 Cal.App.5th 713, 733 ["Cases allowing lay opinion testimony uniformly hold that a lay opinion based on a witness's personal observation, including observation about the speed of a vehicle, is admissible"].)

The Ranch repeatedly asserts neither DeSilva nor Borunda could testify, nor was there any other evidence or testimony, that the explosive testing could be heard on the Ranch's property or had impacted animals on its property. The Ranch provides no analysis or reasoning why the Department's offer of proof required such a showing and why the purported lack of such an offer of proof demonstrates the trial court *abused its discretion when it granted the Department's motion*. In our view, the argument goes to the weight of the evidence and not its admissibility. The Ranch was free to make evidentiary objections during the witnesses' testimony (e.g., lack of foundation), free to question the witnesses as to their personal experiences, and free to argue the pertinent import of the witnesses' testimony. The Ranch thus could have argued to the jury that the witnesses had no personal experience with the explosions from the perspective of the Ranch's property, and their testimony thus presented no basis to undermine Vollmar's and Shilling's opinions as to the recreational area's sound effects on the Ranch.

To the extent the Ranch asserts the trial court's evidentiary ruling allowing for limited testimony regarding explosions on other properties constituted prejudicial error in

50

light of the testimony *actually presented* by Borunda and DeSilva at trial, we do not consider the argument. The testimony presented at trial is relevant only to the determination of prejudice, if any, because the testimony was not before the trial court when it granted the Department's motion. Having concluded the Ranch has failed to demonstrate the trial court abused its discretion, an analysis of prejudice is unnecessary.

In that regard, we also do not consider the Ranch's quibble with the trial court's limiting instruction. First, the Ranch did not challenge the limiting instruction under a separate heading, identifying it as an issue on appeal. (*Pizarro v. Reynoso*, *supra*, 10 Cal.App.5th at p. 179.) Second, the limiting instruction does not provide any context for determining whether the trial court abused its discretion in granting the Department's motion based on the offer of proof.

For the foregoing reasons we conclude the Ranch has failed to show the trial court abused its discretion when it granted the Department's motion to admit the limited evidence as to the explosions on properties in the vicinity of the Ranch.

## VIII

### *We Decline The Request To Reverse And Remand For A New Jury Trial*

The Ranch argues, even if its other claims of error fail, we should reverse and remand for a new jury trial limited to the breach of contract cause of action and a court trial on the remaining causes of action. The Ranch summarily asserts, because "[n]one of the other five forms of verdict[, except for the breach of contract cause of action] called upon the jury to perform any task within its province as *a legal claim factfinder*, e.g., determine a claim for damages," it was improper to have the jury render verdicts on the other causes of action.

When the trial court, however, considered the sequence of the trial, the Ranch *expressly* stated and agreed with the trial court that the jury would decide all the causes of action, except for the declaratory relief "cause of action," because they were legal claims. The Ranch indeed specifically argued the jury would conclusively decide the factual

51

issues as to whether a nuisance existed. The Ranch fails to explain the change in its position and theory on appeal. It further fails to cite authority and explain why all except the breach of contract cause of action should be decided by the trial court. The Ranch merely cites general propositions of law that equitable claims are to be tried by the trial court. While that may be true, the relief requested does not determine the nature of the claim; we look at the gist of the action. (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 9-10.)

Based on the argument presented, we find no basis for granting the Ranch the relief it seeks. The Ranch got what it wanted—the jury decided the breach of contract, nuisance, trespass, and breach of the implied covenant of good faith and fair dealing causes of action. It cannot now complain without any pertinent legal analysis that the trial court erred in submitting those causes of action to the jury.

## DISPOSITION

The judgment is affirmed. The Department shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
ROBIE, Acting P. J.

We concur:

/s/
DUARTE, J.

/s/
BOULWARE EURIE, J.

53